# SPECIAL COURT OF APPEALS

OF

# VIRGINIA.*

## Richmond.

STUART'S EX'OR v. PEYTON AND OTHERS.

DECEMBER 21, 1899.

1. APPEAL AND ERROR—*Decision of Court of Appeals—Finality—Jurisdiction—Res Judicata.*—The decision of a case by this court is final, and cannot be modified or reversed by any other court of the State, nor even by this court after the adjournment of the term at which it is rendered, except as authorized by statute. The rendition of a judgment or decree settles the question of jurisdiction, and that and all other questions adjudged, becomes *res judicata* with the finality of such judgment or decree.

2. SET-OFF—*Interest in a Fund in Court—How Set Off.*—A judgment debtor may set off in equity against the creditor's judgment the beneficial interest of such debtor in a decree in favor of a receiver

---

*This court was convened under the provision of Article VI., section 3, of the Constitution of Virginia, and section 3095 of the Code, enacted in pursuance thereof, and was composed of Keith, P., and Cardwell, J., of the Supreme Court of Appeals, and Circuit Judges Beverly R. Wellford, Jr., Henry E. Blair, and Stafford G. Whittle. Judges Riely, Buchanan, and Harrison, of the Supreme Court of Appeals, were so situated as to make it improper for them to sit on the hearing of the case.

of another court against such creditor, although the receiver be not a party to the suit in which the set-off is allowed. A copy of the decree allowing the set-off filed in the receiver's suit will furnish sufficient protection to the creditor.

3. UNPAID STOCK SUBSCRIPTIONS—*Liability for Assessments—Buyer and Seller—Case in Judgment—Res Judicata.*—Where buyer and seller of stock in a joint stock company have both regarded and treated the stock as paid up and non-assessable, the seller is liable to the buyer for future assessments lawfully made on the stock, although the contract of sale stipulates that he is to be relieved from all liability as endorser or otherwise, for the debts of the company. Such assessment is not a debt or liability *for* the company, but a debt or liability of the stockholder *to* the company. The former suits between the same parties have not otherwise adjudged.

4. SET-OFF—*Funds in Court—Case in Judgment.*—An agreement between one who is both debtor and creditor of a fund in court and other creditors that his dividends on the fund shall be applied to his debt until it is discharged, will not prevent him from setting off a portion of his claim upon the fund against the obligation of an insolvent debtor to the fund, as the refusal of set-off does not increase the fund, whilst its allowance diminishes a fixed charge upon it. In the case in judgment, the fund in court is very largely indebted to the estate of a creditor who is indebted to the fund in a comparatively small amount, and the allowance of the set-off cannot injuriously affect the other creditors of the fund; nor can it affect the creditors of said estate, as it is insolvent, and the allowance of the set-off diminishes its liabilities.

Appeal from a decree of the Circuit Court of Wythe county, pronounced September 27, 1897, in the chancery suit of *Spiller for, &c.* v. *Stuart's Ex'or and Others,* in which the appellee asserted certain judgments against appellant.

*Reversed.*

Counsel for the parties in the Circuit Court entered into the following stipulation:

In the matter of the judgments filed before the commissioner by E. O. Peyton, assignee of George L. Peyton, against W. A. Stuart's estate, the commissioner having by his report referred

the questions involved in said matter to the court without deciding said questions, it is agreed that said questions may be decided by the court without formal exceptions to said report .and without formal pleadings.

And that, upon the hearing of said matter, the court may consider the evidence introduced by both parties before the commissioner, and such portions of the printed records in the case of *Camden* v. *Stuart and Others* (No. 159), and *Stuart* v. *Greenbrier White Sulphur Springs Company*, lately pending in the Supreme Court of Appeals of the United States; and the two records in the case of *Peyton* v. *Stuart*, lately pending in the Court of Appeals of Virginia, as either party may desire to use, and also the letter of W. A. Stuart to clerk Circuit Court of Augusta county, dated October 21, 1891, and the affidavit of George M. Cochran and John M. Kinney, thereto attached, and also the agreement dated February 18, 1890, signed by W. A. Stuart, J. S. Lemmon, solicitor for H. G. Dulany, Jr., and Alex. F. Mathews, of counsel, and filed in the consolidated cause of *W. A. Stuart* v. *The Greenbrier White Sulphur Springs Co.; The Greenbrier White Sulphur Springs Co.* v. *W. A. Stuart et als.;* and *Wm. Knabe & Co. for, &c.* v. *The Greenbrier White Sulphur Springs Co. et als.*, pending in the United States Circuit Court for the District of West Virginia, at Parkersburg, a certified copy of which is filed herein, and may be used instead of the original, together with the affidavit of L. B. Dellicker attached thereto and also any other competent evidence that may be introduced by either party without the formality of depositions touching the matters contained in said letter and agreement.

And we consent that so much of the decree entered in this cause on the 19th day of February, 1896, as required the executor of W. A. Stuart, deceased, to file a cross bill in reference to the above matters, may be set aside."

In consequence of this stipulation, the record printed in this

cause does not give fully all of the facts. The following state-
ment of facts is taken from the brief of counsel for the appellee:

"In 1880, the property known as the 'Greenbrier White
Sulphur Springs,' in Greenbrier county, West Virginia, was
offered for sale under a decree of the Circuit Court of the United
States for the District of West Virginia. W. A. Stuart had
large claims against the property as a creditor. On the 30th of
January, 1880, an agreement was entered into between W. A.
Stuart, George L. Peyton, and J. N. Camden, whereby it was
agreed that Stuart should purchase the property at a sum not
exceeding $310,000 at the sale to be made under said decree.
That said parties would form a corporation with a capital stock of
$100,000, of which Stuart was to hold one-fourth, Peyton one-
fourth, and Camden one-half, the said Camden to have the
privilege of substituting some person acceptable to his associates,
who should hold one-half of his said stock. Stuart agreed to
convey the said property to said company, when formed, upon
certain favorable terms as to the payment of his claims against
the property. Among other things, he agreed to give a credit
of twenty years on $200,000 of his said debt; and it was agreed
that when all the creditors entitled to participate in the distribu-
tion of the purchase money arising from said sale, except Stuart,
should have received the sums to which they were entitled, then
the said company should execute a deed of trust on said prop-
erty securing as a first lien thereon said sum of $200,000 to the
said Stuart. Camden agreed to guarantee payment by said com-
pany to said Stuart of one-half of the amount agreed to be paid
to him on certain classes of his debts, amounting to about $184,-
000. Peyton agreed to guarantee the payment by said company
of one-fourth of said sum.

"At the same time there was a private agreement between said
J. N. Camden and Henry M. Matthews, by which the latter

was to take one-half of the capital stock subscribed by the said Camden, and assume one-half of his guarantee.

" The property was sold under said decree, and Stuart became the purchaser thereof in pursuance of said agreement. A charter was obtained from the Secretary of State of West Virginia for an incorporation to be formed in pursuance of said agreement, but for some reason the company was not organized, and the gentlemen above named, viz: Stuart, Peyton, Camden, and Matthews, took possession of the property and ran it under the name of the Greenbrier White Sulphur Springs Company, as a summer resort, during the season of 1880. In December, 1880, another charter was gotten out (the first one having lapsed) for a corporation to be known as the Greenbrier White Sulphur Springs Co., with a capital stock of $150,000.

" On the same day that the agreement for the purchase of the property was made between Stuart, Camden, and Peyton, to wit, on the 30th of January, 1880, an agreement in writing was entered into between said Peyton and Stuart by which it is recited that said parties join in an agreement with Camden looking to the purchase of the White Sulphur Springs property in the proportion of one-half to Camden, and one-fourth each to said Peyton and Stuart, and that the said Stuart, to enable Peyton to unite in the purchase of said Springs, had agreed to postpone payments which would be due him, as a creditor under the sale, for many years, and had agreed to advance for said Peyton one-fourth of the $50,000—the amount necessary to be paid in the ensuing season. It was thereupon agreed that Stuart should be exonerated from all accountability for the salary of said Peyton as chief manager of the Springs, after the contemplated purchase, until such time as Peyton should reimburse Stuart for all advancements made for him on said purchase, &c. And Peyton, moreover, agreed to pay six *per cent.* interest

annually on all advancements made for him, which advancements were to be regarded as a lien upon his interest in the property, and that Stuart should have any script of the company to which Peyton might be entitled by reason of such advancements, such script to be held as collateral security until the advancements were refunded, &c.

" On the 29th of December, 1880, the Greenbrier White Sulphur Springs Co. was organized with a capital stock of $150,-000, divided into shares of $100 each, as follows:

| | |
|---|---|
| William A. Stuart.................. | 375 shares. |
| George L. Peyton.................... | 375 shares. |
| J. N. Camden...................... | 188 shares. |
| W. P. Thompson................... | 187 shares. |
| H. M. Matthews.................... | 375 shares. |

" This stock was issued as full paid stock. It seems that about $80,000 had been paid in cash. It was estimated that about $56,000 of profits had been made out of the operation of the property during the season of 1880. Four thousand dollars in cash was raised by the stockholders at the time of said organization, and after discussing the matter amongst themselves, taking into consideration the amount of money paid in, the estimated earnings of the company during the past season, and the improved condition and earning capacity of the property, the stockholders, under the advice of Mr. Camden, concluded that they were justified in issuing said stock to the amount of $150,000 as full paid and non-assessable.

" Of the amount of money paid into the company on its capital stock, W. A. Stuart paid one-fourth on his own account and one-fourth on the account of George L. Peyton's stock, and for the amount paid in for Peyton, Stuart took Peyton's negotiable notes from time to time, and also held the certificate issued to said

Peyton for said 375 shares of stock, as collateral security for said advancement.

" The company gave a deed of trust on the property conveyed to it by Stuart dated April 6, 1882, to William W. Gordon and Isaac H. Carrington, trustees, to secure its bonds to the amount of $200,000. The property was operated as a summer resort by the company during the seasons of 1881 and 1882, and it became heavily indebted, and gave a number of notes and other obligations for its debts, a number of which notes were endorsed by Stuart, Matthews, and Peyton, and some by R. A. Lancaster, to whom Camden and Thompson had sold their stock on May 31, 1881.

" On the 10th day of April, 1883, William A. Stuart filed his bill in the Circuit Court of the United States of West Virginia, on behalf of himself and all other creditors against the Greenbrier White Sulphur Springs Co. and Gordon and Carrington, trustees, alleging that the company had made default in the payment of its interest on the bonds secured by said trust deed, and praying for an account of the debts and assets of the company, and a sale of its property. In this suit a receiver was appointed.

" Prior to this time, viz., on the 4th day of November, 1882, W. A. Stuart, by a written contract of that date, had bought of George L. Peyton his stock in the Greenbrier White Sulphur Springs Co. on the basis of cost and $5,000.

" In September, 1886, there were instituted in the Circuit Court of Augusta county, Virginia, by William A. Stuart against George L. Peyton and others one common law suit and three suits in chancery:

" First. The common law suit was founded upon a negotiable note for $5,000 of the Greenbrier White Sulphur Springs Co., dated July 15, 1881, and endorsed by the said George L. Peyton. In this suit Peyton filed a set-off of the $5,000 bonus due him upon the contract of the sale of his stock to Stuart above mentioned, which Stuart had never paid. And thereupon Stuart

filed counter set-offs of three negotiable notes of the Greenbrier White Sulphur Springs Co., each in the amount of $10,000, endorsed by W. A. Stuart, George L. Peyton, and Henry M. Matthews.

" Second. A chancery suit brought by W. A. Stuart against George L. Peyton, which was a creditor's bill filed by Stuart asserting as a lien upon Peyton's realty one-third of a decree for $27,519.30 and costs rendered in favor of H. M. Bell, receiver in the case of Effinger and others against Stuart and others against said Stuart and Peyton and others at the May term, 1885, in the Circuit Court of Augusta county, Stuart claiming in said bill that he had paid this decree, and that Peyton was bound to him for one-third thereof, and that he, Stuart, was substituted to the right of the plaintiff therein against Peyton.

" Third. A chancery suit brought by W. A. Stuart against said George L. Peyton and R. A. Lancaster & Co., having for its object the enforcement of contribution from the defendants to the plaintiff upon certain negotiable notes of the Greenbrier White Sulphur Springs Co., jointly endorsed by them, and which Stuart claimed to have paid.

" Fourth. A chancery suit brought by Stuart against Peyton for the purpose of enforcing contribution from the defendant Peyton to said Stuart upon certain negotiable notes of the Greenbrier White Sulphur Springs Co., jointly endorsed by said Peyton and said Stuart, and claimed to have been paid by said Stuart.

" In all these suits said George L. Peyton set up a line of defence which was common to all the cases, and which, if sustained, would defeat Stuart out and out, and would entitle the said Peyton to a judgment against Stuart for the $5,000 bonus due him upon the sale of said stock with interest.

" This defence was, in effect, that by the contract of November 4, 1882, Stuart bought Peyton's stock in the Greenbrier White Sulphur Springs Co., and at the same time assumed all of Pey-

ton's liabilities arising out of his connection with said company, and as all the claims set up by Stuart in said suits against Peyton were liabilities of his growing out of his endorsement of the paper of the said Greenbrier White Sulphur Springs Co., which Stuart had taken up, Stuart could not recover the same against him because under his contract with Peyton he himself had assumed these liabilities, and therefore could have no claim against Peyton for them. This being a defence common to all the suits, as they involved statements of account, &c., between the parties, all of said cases were referred to a commissioner, the common law suit as well as the three chancery suits, and this commissioner made a report, in which he referred to the common defence set up in all the cases, and stated that it had been agreed between counsel of Stuart and Peyton, respectively, that in order to save time, repetition, and expense, he (the commissioner) might in one suit dispose of all matters as between Stuart and Peyton, making mere naked findings as to Peyton in the other three cases, and referring to said report for his reasons therefor. The commissioner found against Peyton, overruled his common defence, and ascertained that there were large amounts due from him to Stuart on the matters set up by Stuart. This report, it seems, was filed in one of the chancery causes. Peyton excepted to the report—the court overruled his exceptions and entered a judgment against him in the law case, and decrees against him in the chancery causes. Peyton appealed to this court, and, after elaborate and able arguments by counsel on both sides, this court reversed the findings of the Circuit Court, holding that Peyton's common defense in all the suits was valid; that Stuart was not entitled to contribution from him or to recover anything from him upon any of the matters set up in said suits, but that Peyton was entitled to recover from said Stuart the sum of $5,000, with interest thereon from November 4, 1882, being the bonus which Stuart had agreed to pay

Peyton on his stock. And this court thereupon entered a judgment in favor of the said Peyton against the said Stuart for the said sum of $5,000, with interest as aforesaid.

"This decree of the Court of Appeals was entered on the 18th of June, 1891. It was entered as applying to all the four cases. The decree uses this language:

" ' These causes which are pending in this court at its place of session at Richmond, having been heard but not determined at said place of session, this day came here the parties by their counsel, and the court having maturely considered the transcript of the record of the decrees and order rendered in the said four suits, is of opinion, for reasons stated in writing and filed with the record, that the said Circuit Court of Augusta county erred in its action in each of the foregoing suits in overruling the exceptions of George L. Peyton to the commissioner's report of J. Green Smith, filed in these causes and in approving and confirming said report, and that the decrees and order rendered by the said Circuit Court of Augusta county are wholly erroneous. And the court is of opinion that the defense set up in this suit is, under the agreement of the parties, equally applicable to each of the other suits. The court doth therefore adjudge and order that the said decree and order rendered in each of the four suits be rev.rsed and annulled. And this court proceeding to make such decree in these suits as the said Circuit Court ought to have rendered, doth decree and order that the said exceptions to the said report of Commissioner Smith be sustained, and that the said report be rejected by the court, and in the common law suit referred to the said commissioner, by consent of the parties, along with the three chancery cases, the court orders that the plaintiff Stuart do pay to the defendant Peyton $5,000, with interest from November 4th, 1882, until paid, and the costs by the said defendant incurred in his defence in the said Circuit Court. And in the three chancery causes brought by the said

Stuart to have contribution of said Peyton for amounts paid, as alleged on the notes therein set forth, the court doth adjudge and order that the said bills of the plaintiff be dismissed, and that the said plaintiff Stuart do pay to the defendant Peyton his costs by him expended in the said Circuit Court of Augusta in his defence of each suit, &c.' "

" Thereupon William A. Stuart filed in this court his petition for a rehearing of said decree, the main ground of which was that only one of the four cases above mentioned was before this court on the appeal, and that the court, therefore, had no power to render the decree it did as applicable to all four of the cases, and especially to enter a judgment in the law case against Stuart. This point was elaborately presented in the original petition for a rehearing, and also in a supplemental petition for a rehearing filed by said Stuart in this court. Exactly the same point was made, and the same arguments used as are now presented to this court in the first assignment of error in this case.

" On the 10th day of July, 1891, this court entered an order under the titling of all of said four cases, reciting the filing of said petition for rehearing, and deciding that the court on mature consideration doth deny the prayer of said petition. And on the same day the court modified its former decree somewhat, but in no important particular so far as this controversy is concerned.

" Meantime the suit of William A. Stuart against the Greenbrier White Sulphur Springs Co. and others in the United States Court of West Virginia, by decree of January 9, 1884, had been referred to D. C. Gallaher, commissioner, to report upon the assets and liabilities of said company, and in June, 1884, said commissioner had filed his report. On the 22d of January, 1885, the said cause was recommitted to said Gallaher with instructions, among other things, to report what amounts, if any, are due from present or former owners of the stock of said company on account of their subscriptions to stock, and what amounts such present or

former owners of such stock are liable for by reason of their ownership. On the 30th of May, 1885, Mr. Gallaher filed his second report in which he held that the stock was fully paid up, and there was no liability upon either the former or present stockholders. This report was excepted to by creditors, because, among other grounds, the commissioner had found that said stock was fully paid up. On the 3d day of September, 1885, William Knabe & Co. filed their petition in said cause charging that said stock was not fully paid up, and that there was a liability upon the stockholders for an unpaid balance upon said stock, said Knabe & Co. being large creditors of the Greenbrier White Sulphur Springs Co. This petition was treated as an original suit, to which the original and present stockholders and others were made parties. William A. Stuart filed his answer to said petition of William Knabe & Co., in which he says:

" ' Your respondent denies that any portion of the subscriptions to the said $150,000 of capital stock (except possibly the portion payable by the late Henry M. Matthews on the call for $4,000 made by the directors at their meeting in December, 1880) remains unpaid. On the contrary, full paid shares have been issued, and as your respondent is advised and insists, legally and properly issued to the subscribers therefor, or to their assignees, except possibly as to the portion of the $4,000 all payable by said H. M. Matthews, as to the payment of which by said Matthews your respondent is not certain.'

" Said answer then goes on and sets forth the facts and reasons for issuing said stock as full paid substantially as hereinbefore stated.

" The case was thereupon referred to Commissioner W. J. Leake, by decree of June 26, 1886, and on the 10th day of June, 1887, said Commissioner Leake filed his report, in which he held, among other things, that there was due from each of the original stockholders of said Greenbrier White Sulphur Springs

Co. on account of his subscription to the stock of said company the following amounts, viz:

From William A. Stuart................$18,937.08
From George L. Peyton ................ 18,937.08
From J. N. Camden.................... 9,495.12
From W. P. Thompson ................ 9,441.96

" And that each of the original subscribers was bound for the unpaid part of his subscription.

" This report was excepted to by William A. Stuart on the ground, among others, that the commissioner had held that he still owed the balance of $18,937.08, with interest, on his original stock subscription, and he sets forth fully the reasons why said report in that respect was erroneous. In said exception the said Stuart uses the following language:

" ' Commissioner Leake seems to have come to the conclusion that it is not to be regarded as fully paid, because he thinks it has been shown by a critical examination of the books of the company made by the witness Boudar as an expert accountant, that instead of the estimated profit of $56,000 for the season of 1880, a profit of $4,251.68 was actually realized. The commissioner appears to have fallen into the error of supposing that the $56,000 of estimated profit was treated in the organization of the company merely as so much money actually paid in by the stockholders on account of their subscriptions, when in truth, in determining whether certificates for paid up shares should be issued, it was referred to and treated by the stockholders not merely as so much money contributed by them, but chiefly as evidence furnished by the experience of the season of 1880 of the productive capacity and real value of the property in its then condition. It is, therefore, not very important to show that Boudar's statement is erroneous and grossly unjust to the stockholders, &c.'

" The said report was also excepted to by counsel for unsecured creditors. Their thirteenth exception is as follows:

" ' Said report is further excepted to because said commissioner reports that George L. Peyton and not William A. Stuart is liable for the unpaid subscription on the stock formerly subscribed for by George L. Peyton, said Peyton having long since, with knowledge of the board of directors of said G. W. S. S. Co., transferred his stock to W. A. Stuart as collateral security for the payment of a debt due by Peyton to Stuart, and having since the failure of the company absolutely sold said stock to said Stuart, who at the time knew that the unpaid subscription was yet to be paid, and who assumed all further liability thereon.'

" Mr. Camden also was later on permitted to file his answer to said petition of William Knabe & Co., in which he insisted vigorously that the said stock was fully paid up, and gave the same facts and reasons for so stating that were given by the said Stuart, and which are set forth above.

" On the 11th of February, 1888, a final decree was entered in said cause overruling the exceptions of Stuart and Camden, and ignoring the above quoted exception of the unsecured creditors to Commissioner Leake's report, and decreeing, among other things, against the original stockholders for the several sums found by said report to be due from them on their stock subscriptions, and directed A. L. Boulware, the receiver in said cause, to collect the said several sums of money from said several parties by suit, or any legal proceedings which he may be advised to take.

" From this decree Stuart & Camden appealed to the Supreme Court of the United States, and said court, by a decision rendered on the 9th day of June, 1892, affirmed the said decree. *Camden* v. *Stuart*, 144 U. S. 104

" Whilst this cause was pending in the Supreme Court of the

United States, an agreement was made by W. A. Stuart and the counsel for other parties to the case on the 18th of February, 1890, by which Stuart agreed that all moneys payable in said cause to him as an unsecured creditor or otherwise than as lienor on the lands, should be retained by the register until the decision of the Supreme Court of the United States on the appeal that had been taken, and that should said Stuart be ultimately held liable as a stockholder under said decree, in part or in whole, the money coming to him in the cause from his co-stockholders or others should be applied to the full and complete settlement of so much of the liability of said Stuart as might inure to the benefit of parties to said cause other than himself:

" And in October, 1891, Stuart proposed to give to Peyton his negotiable note for the amount of the judgment obtained by Peyton against Stuart in the Circuit Court of Augusta county by order of the Court of Appeals, with G. W. Palmer as endorser.

" Stuart died in the year 1892, leaving a very large indebtedness, and not property enough to pay twenty-five cents on the dollar of his unsecured debts. W. H. Spiller brought a creditor's suit in the Circuit Court of Wythe county for the settlement of his estate and sale of his property. The case was referred to Commissioner Fulton. Dr. E. O. Peyton, to whom the judgments obtained by George L. Peyton against W. A. Stuart above mentioned had been assigned for value, on the 8th of November, 1892, presented said judgments before the commissioner for allowance as claims against the estate of Stuart and liens on his real estate. This was resisted by the executor of Stuart, who presented to the commissioner a certified copy of the decree of the United States Court in the case of Knabe & Co. against the Greenbrier White Sulphur Springs Co. showing the recovery of the $18,937.08 against said George L. Peyton on account of his liability as original stockholder in said company. The executor also presented certain portions of the record of said cause,

Opinion.

showing the indebtedness of said company, and testified that Stuart was the owner of more than three-fourths of the unsecured debts proved in said causes. That no part of the decree against Peyton had been paid. Peyton was reported as notoriously insolvent, and he asked to set off the said decree of the United States Court against George L. Peyton against the said judgments recovered by the said George L. Peyton against W. A. Stuart. The commissioner referred the questions to the court for decision, and the Circuit Court of Wythe county finally held that the matters set up by the executor against the claims of Peyton were not a valid defence and did not constitute a set off to said judgments, and rendered a decree in favor of Peyton against the estate. From that final decree this appeal has been prosecuted by the executor. Three grounds of error are assigned in the petition for an appeal:

" ' 1st. That the said judgment for $5,000 and the decrees for costs in the chancery causes are absolute nullities.'

" ' 2d. That if said judgments are valid the court erred in refusing to Stuart's estate the right to set off against these demands that portion of the decree of the United States Court against Peyton to which Stuart was shown to be entitled in the proceedings in that cause as a creditor of said company.'

" ' 3d. That Peyton having transferred to Stuart for value three hundred and seventy-five shares of the capital stock of the Greenbrier White Sulphur Springs Co. as fully paid, and it having been afterwards determined by adjudication that fifty *per cent.* thereof was unpaid, he is liable as between himself and Stuart for the amount of the unpaid subscription.' "

*White & Penn,* for the appellant.

*George E. Price,* for the appellee.

WELLFORD, J., delivered the opinion of the court.

The record in this case brings under review a decree of the Circuit Court of Wythe county, rendered September 27, 1897, in a general creditor's suit against the appellant as executor and himself and others as heirs and devisees of William A. Stuart. The appellee, claiming to be the assignee of George L. Peyton, presented his claim to the commissioner acting under the usual order of reference for the ascertainment of assets and liabilities of the estate of W. A. Stuart. In support thereof he filed four extracts from the records of the Circuit Court of Augusta county, each reciting a judgment or decree rendered "September 20, 1891, by order of the Supreme Court of Appeals of Virginia" in favor of George L. Peyton against William A. Stuart, and this endorsement by George L. Peyton on the execution in each case: "This judgment (or decree) and execution is assigned to E. O. Peyton on the 8th day of November, 1892, and is now for his use." The claim being disputed, the commissioner, without expressing any opinion, referred the controversy to the court for adjudication, and the court decreed that the judgment and decrees were valid and subsisting claims against the estate of William A. Stuart, deceased, and valid and subsisting liens upon his real estate.

There is no evidence in the record of any valuable consideration for the assignment to the appellee, and it does not appear that in the progress of the case there has been or is now any claim on his behalf to occupy a more favorable position in the determination of the controversy than George L. Peyton would have done if he were before the court asserting the claim for himself.

The appellant assigns two causes of error.

The first assignment of error in the petition for appeal is: "The judgment at law and the decree for costs in two of the

chancery suits pronounced by the Court of Appeals are absolute nullities."

The contention here is that the suit at law and two of the chancery causes were not before the Court of Appeals by writ of error or appeal when the case of *Peyton* v. *Stuart* was heard by that court in June, 1891; that the court had no jurisdiction as to these cases, and that therefore the mandate of its decree of June 18, 1891, conferred no authority upon the Circuit Court of Augusta county to pronounce the judgment and decrees complained of.

This contention was fully considered by the Court of Appeals on the hearing of the case, as shown in the published report of *Peyton* v. *Stuart*, 88 Va. 50, and imposingly presented in the dissent and protest of two of the judges, one of them the president of the court.  A timely petition for a rehearing, reiterated all the objections theretofore made to them and now submitted to us, and afforded full opportunity to review the opinion and modify the decree before it became final. . It was not, therefore, by inadvertence, but as the deliberate and fully considered judgment of the Court of Appeals, that the decree of June 18, 1891, became final.  The question of jurisdiction laid necessarily *in limine*, and that question, as well as all other matters of controversy, became, by the finality of the decree, *res adjudicata*. Whether that cause was rightfully or wrongfully decided in the subsequent opinion of the same judges, in the judgment of this or of any other court, it passed, when the term of court closed, beyond the power of amendment or revision.

An unbroken line of decisions in Virginia, in perfect harmony, we believe, with those of all her sister States establishes, in the language of Judge Baldwin, in *Reid's Adm'r* v. *Strider's Adm'r*, 7 Gratt. 81, that " the finality and irreversibility of the judgments and decrees of the Court of Appeals after the close of the term in which they are rendered is inherent in the very nature and constitution of the tribunal, and cannot be disturbed

without deranging the administration of justice, and the introduction of intolerable evils in practice." *Bank Virginia* v. *Craig,* 6 Leigh 400; *Griffin* v. *Cunningham,* 20 Gratt. 31; *Campbell* v. *Campbell,* 22 Gratt. 667; *Stuart & Palmer* v. *Heiskell,* 86 Va. 191; *Roanoke St. Rwy.* v. *Hicks,* 32 S. E. Rep. 790.

This court is of opinion, therefore, that there is no merit in the appellant's first assignment of error.

The second assignment of error is that, admitting the validity of the judgment and decrees in favor of George L. Peyton against W. A. Stuart, Stuart's estate has the right to set off against them the interest of W. A. Stuart in a decree of United States Court for West Virginia against George L. Peyton.

The commissioner's report to the court states the matter thus: " Upon the part of the executor it is set up that in the Circuit Court of the United States for the District of West Virginia, in the three several suits in chancery of *Wm. A. Stuart et als* v. *The Greenbrier White Sulphur Springs Co. & Others; Knabe & Co. & Others* v. *The Same;* and *The Greenbrier White Sulphur Springs Co.* v. *Wm. A. Stuart & Others,* which were heard together, a decree was passed on the 11th day of February, 1888, in favor of said Sulphur Springs Co. for the benefit of its creditors against George L. Peyton for the sum of $18,937, with interest thereon from the 30th day of December, 1880.

" By decree in the same cause it was ascertained that W. A. Stuart, who was then living, was entitled to three-fourths of the unsecured debts of the White Sulphur Springs Co., and that the sum decreed against Peyton is applicable to the payment of those debts; that George L. Peyton is notoriously insolvent, and the Greenbrier White Sulphur Springs Co. is also insolvent, and if Mr. Stuart's estate is not permitted to set off its interest in the decree against Peyton against the $5,000, and the judgments for costs which Peyton now seeks to enforce against the said estate, the debt to the estate will be wholly lost.

" On the part of counsel representing Dr. E. O. Peyton,

assignee, it is claimed that this decree in favor of the White Sulphur Springs Co. is not available either in law or in equity as a set-off in favor of the estate of W. A. Stuart.

"And, secondly, that by the terms of the contract of sale of November 4, 1882, between Peyton and Stuart, the former was relieved of all liability for the debts of the company as endorser or otherwise, and that this has been settled beyond all controversy by the decision of the Supreme Court of Appeals of Virginia in the case of *Peyton* v. *Stuart*, 88 Va. 50."

A third ground of objection to this claim of appellant is thus stated in the brief submitted in the case by learned counsel for the appellee:

" But even if Stuart ever had the right of set off now claimed, he forever put it out of his power to exercise it by the agreement dated February 18, 1890, signed by the said Stuart, by J. S. Lemmon, solicitor for H. G. Dulaney, Jr., and by Alex. F. Mathews, of counsel, filed among the papers of the *Greenbrier White Sulphur Springs Co.* case in the United States Court at Parkersburg, W. Va., a certified copy of which, fully proven as to the signatures of Stuart, is filed in this proceeding. By that paper Stuart agrees that ' should said Stuart be ultimately liable under said decree in part or whole, the money coming to him in this cause from his co-stockholders or others shall be applied to the full and complete settlement of so much of the liability of said Stuart as may inure to the benefit of parties to said cause other than himself.' "

This controversy arises out of a general creditor's suit, in which the bill alleges the entire insufficiency of the personal estate of W. A. Stuart to pay his liabilities; and the commissioner's report, approved and confirmed by the court, found that the liabilities of the estate were so great, and so much in excess of the assets, real and personal, that not more than 25 *per cent.* of the indebtedness could be paid. It is apparent, therefore, that the objections of the appellant to the claim of the appellee, if suc-

cessful, can inure only to the benefit of the creditors. The validity of the claim must, therefore, be considered in view, not only of the equities of William A. Stuart, if living, but of the creditors of his insolvent estate.

The first objection to the set off claimed by appellant, as stated in the commissioner's report above quoted, is in the nature of a demurrer—conceding all the facts and denying their availability in this case as a defence. The facts thus conceded are briefly these:

George L. Peyton is the adjudicated debtor, for the sum of $18,937 and interest from December 30, 1880, to a trust fund under administration by the United States Circuit Court of West Virginia for benefit of creditors of the White Sulphur Springs Co. William A. Stuart is the ascertained beneficiary of 75 *per cent.* of that trust fund. George L. Peyton is notoriously insolvent, and nothing can be realized out of him for that trust fund. If, therefore, he can, by reason of this claim, be allowed any recovery from the estate of William A. Stuart, such recovery will redound not at all to the interest of the trust fund, or any one of its beneficiaries, but it will impose, for its payment, upon the insolvent estate of the chief beneficiary, the loss of several thousand dollars, cumulated upon the conceded loss, by reason of Peyton's insolvency, of Stuart's beneficiary interest in the trust fund, to which Peyton is so largely indebted.

In *Feazle* v. *Dillard*, 5 Leigh 30, the Court of Appeals had under consideration the principle controlling a court of equity in an application for injunction to stay the collection of a matured obligation by setting off an unmatured liability of the debtor for an insolvent obligor. If the principle announced by Judge Tucker in that case (p. 36), upon which the court should proceed, " of protecting the party from a payment of money to one to whom in justice and equity he owes nothing," be applied to this agreed state of facts, it would seem very clear

that Stuart if he, and not Peyton, were seeking equitable aid, would be entitled to relief.

The only apparent difficulty in recognizing the set off is the absence from the record of the receiver of the United States Court. This technical difficulty would be very embarrassing, and perhaps fatal, in a court of law. His presence before the court may have been contemplated in the decree of February 19, 1896, requiring Stuart to file a cross-bill " making E. O. Peyton and George L. Peyton and any others that he may think proper defendants to said cross-bill." This decree, however, was agreed to be set aside in the agreement of counsel filed in the record, on which agreement the cause was heard and final decree entered September 27, 1897. Whether this agreement could or could not be regarded as a waiver of the objection to the absence of the receiver, we think, is not material. If, therefore, the absence of the receiver as a party to the record must preclude us from any consideration of the equity of Stuart as a creditor in the West Virginia suit, the final decree in this case will present the anomaly in a court of equity of the creditors of an insolvent debtor being required to contribute, out of their proven debts, to the payment of a claim, manifestly without equity, against the estate of a solvent debtor. If the receiver were a party to the cause, the only beneficial interest he could represent would be that of Peyton to secure a credit upon the decree against him of the United States Circuit Court, and that of the creditors of the White Sulphur Springs.Co. to protect them in any future dividends from excessive payments. The difficulties suggested as consequent upon a decree in this cause rejecting Peyton's contention are much more fanciful than real. If they were real, Peyton could not complain of them as the necessary incident of his own voluntary appeal to the court to allow an inequitable claim. The agreement of Stuart with his co-creditors, filed in the record of the United States Court, assures to them payment in full out of the trust fund before Stuart can receive one cent.

But the decree in this case, if Peyton's claim be rejected, should, in accordance with the opinion expressed hereinbefore, adjudge the validity of Stuart's debt to Peyton established by the judgment and decrees of the Circuit Court of Augusta, and the disallowance of his participation in the assets of W. A. Stuart's estate solely because of his larger indebtedness to Stuart in the United States Court. We apprehend that a copy of this decree filed in the papers of that suit will be accepted by the United States Court as abundantly sufficient to concede to Peyton the benefit of the credit, and to abate to a corresponding extent the claim of Stuart upon the fund.

The second objection to the allowance of the set-off is based upon the terms of the contract between Peyton and Stuart of November 4, 1882, under which Stuart became the purchaser of Peyton's stock in the White Sulphur Springs Co. The United States Court decreed that this stock, though treated by both Peyton and Stuart as paid up and non-assessable, was liable to assessment for unpaid subscription, and the decree against Peyton was for the payment of such assessment. The contention of Peyton in this second objection is that Stuart, in his contract of purchase, assumed all liability for this assessment, and that this construction of the contract was settled beyond controversy in the case of *Peyton* v. *Stuart,* 88 Va. 50. This contract, and a full history of all the circumstances, is set out in the report of that case, and need not be here repeated.

We are of opinion that this is not a just construction of the contract between Peyton and Stuart of November 4, 1882, and that this construction was not established by the judgment of the Court of Appeals in the four several cases of *Peyton* v. *Stuart,* reported in 88 Va.

In overruling the first assignment of error in this case we have recognized the finality and binding obligation of that judgment of the Court of Appeals as concluding all controversy as to any questions involved in either one or more of the four causes in

which it was rendered. But the matter now before us was not before the Court of Appeals in any of those causes. It does not appear upon the record, and does not appear to have been suggested in argument, it is not alluded to in the opinion of the court, and there is not the most distant reference to it in the judgment of the court. The language of the judge who pronounced the opinion of the majority of the court, in speaking of the exemption of Peyton from all liability for the debts of the White Sulphur Springs Co. must be regarded as applicable to the liabilities asserted by Peyton in those four causes, which embrace, so far as this record shows, all then matured or accruing obligations incurred by him while one of the owners of stock which he sold and transferred to Stuart as paid up and non-assessable shares. The transfer of these shares was the consideration for the debt represented by the judgment and decrees of the Circuit Court of Augusta county, and for the additional heavy pecuniary burdens imposed upon Stuart by the decision of the Court of Appeals. Throughout that litigation the stock was treated as paid up stock, and its transfer under the contract of sale was spoken of by the judge who spoke for the court as securing to Stuart " one-fourth interest in the stock and the Springs property." The opinion of the court certainly cannot be claimed to have given a construction of the contract more liberal to Peyton than he asserted for himself. That claim is thus set out on page 64 of the reported case in 88 Va., in his own language:

" I accepted the contract as a clear acquittal, believing that it would, as it was intended to do, protect me from all liability for the debts of the company and to Mr. Stuart."

Again, on page 65, he says: " The trade was intended to be a complete settlement of all matters between us, and left me without any interest in or liability for the company, or responsibility to him."

Accepting, therefore, Peyton's own version of the contract, it does not sustain this second objection to the set off claimed in the suit by Stuart's Ex'or. The decree of the United States Court against Peyton and the other delinquent stockholders is not for a debt or liability *of* the company, but a debt and liability *to* the company. The creditors had no claim upon the defaulting stockholders as sureties of the company; but the decree of the United States Court adjudged that these stockholders owed debts to the company which were corporate assets, and as such available to pay the debts of the company. The decree was properly against Peyton for his partial default in the non-payment of subscription for his shares of stock. The creditors of the company, doubtless regarding a decree against Peyton as less available than a decree against Stuart, excepted to the report of the commissioner fixing this liability on Peyton, and claimed that it should have been imposed upon Stuart; but the court overruled the exception.

It is alleged that the stock sold by Peyton to Stuart had not been transferred upon the books of the company, and that under the laws of West Virginia the original holder was liable until such transfer. But if the court had accepted this construction of Stuart's assumption, under his contract, of Peyton's liabilities, we do not see why the decree for his default might not have been made against Stuart either jointly with Peyton, or against him alternatively in event of failure to collect from Peyton. Be that as it may, the decree establishes an adjudicated indebtedness of Peyton to the Greenbrier White Sulphur Springs Co., which the court had sequestrated for the benefit of creditors, of whom Stuart was one with an ascertained interest of, perhaps, 75 *per cent.* in the fund.

The third objection to the set off is that Stuart, by an agreement filed in the papers of the suit in the United States Court for West Virginia, has assigned his interest in the decree against Peyton to his co-creditors in that suit. This agreement was

made pending an appeal to the Supreme Court of the United States from the decree of the United States Circuit Court of West Virginia. The obligations it contemplated pending that appeal are non-existent now, for that cause has been decided, and the ultimate liability of Stuart contemplated in the agreement has been conclusively established by the affirmance of the decree of the United States Circuit Court of West Virginia by the Supreme Court of the United States in *Camden* v. *Stuart,* 144 U. S. 104. That liability having been ascertained, this is the language of the agreement: " The money coming to Stuart in this cause from his co-stockholders shall be applied to the full and complete settlement of so much of the liabilities of said Stuart as may inure to the benefit of parties to said cause other than himself."

There is no consideration set out for this agreement, and there is nothing on its face to indicate that Stuart contemplated in that agreement the transfer of any legal right. It was simply a concession that, in the distribution of the fund sequestrated by the court for the benefit of creditors, Stuart's dividends as creditor should be withheld and appropriated to the satisfaction of other creditors until his dividends should be sufficient to extinguish his debt to the fund. We cannot see that this agreement involved the surrender of any legal right of Stuart. It only waived a possible contention on his part, in future decrees of distribution, and conceded, as matter of law, that before he could rightfully claim a dividend out of the fund he should discharge his indebtedness to the fund.

The allowance of Peyton's claim out of the assets of Stuart will certainly realize no *coming in* of money to the fund in the United States Court. Its necessary effect is to transfer beyond recall to a voluntary assignee, outside of the reach of the receiver of the court, the only apparent property of an insolvent debtor to the fund, which property can only be made available to any

extent to the creditors of the fund by abating the charge of Stuart upon the fund.

On the other hand, while the allowance of the set off will abate to a material extent one of the fixed charges upon it, the decree will take no money out of the fund, and involves no diminution to any of Stuart's co-creditors of proximate or remotely future dividends out of the fund.

The operation of this agreement claimed in this objection to the set off is not made on behalf of any of Stuart's co-creditors. It is obviously adverse to the interest of all parties to that agreement, and, if recognized by the court, will give to a common debtor of all those parties the benefit of a contract in which he was never contemplated, at the expense of all the parties by whom and for whose benefit it was made.

We are, therefore, of opinion that there is no merit in any of these objections to the allowance of the set off, even if the estate of W. A. Stuart was abundantly solvent, and *a fortiori* none against the only parties in this case in real interest, who are the adjudicated creditors of his insolvent estate.

There is no cross-bill in this case requiring or enabling the court to decree as to the exact amount of Stuart's beneficial interest in the indebtedness of Peyton to the fund in the United States Court. It is claimed to be much larger than his debt to Peyton evidenced by the judgment and decrees of the Circuit Court of Augusta county. If this fact be established by evidence satisfactory to the court, the claim of Peyton is clearly not equitably due out of Stuart's assets. The court has only to pass affirmatively or negatively upon the validity of this claim, and, if satisfied that it is not an equitable demand, all that the court can or need do is to reject the claim, setting out in its decree such reasons for its disallowance as will enable Peyton to demand in the United States Court a credit upon the decree against him, and a corresponding abatement of Stuart's charge upon the fund in that court.

The commissioner did not pass upon the claim of Peyton or the counter-claim of Stuart's executor. The cause, however, was heard by the court not merely upon his report as above quoted and the evidence before him, but by agreement of counsel on all the records and other evidence which it seems that the parties deemed material for an adjudication of the controversy. Upon this record, so submitted to the court, there does not appear to have been any contention, or any reasonable room for contention as to any of the essential facts. The commissioner's report and these records and evidence establish the *quantum* of the appellee's claim asserted in this cause, the amount of George L. Peyton's debt to the White Sulphur Springs Co., the sequestration of that debt by the United States Court for the benefit of all the creditors of that company, the insolvency of G. L. Peyton, and the aggregate amount of the debts due by the White Sulphur Springs Co., and of the individual debt due by that company to W. A. Stuart.

The judgment and decrees exhibited by Peyton establish a debt against W. A. Stuart of $5,814.89, with interest on $5,000 from November 4, 1882, and on $814.89 from date of decree, September 29, 1891, amounting now to a fraction over $11,000.

The decree against Peyton in the United States Court is for $18,937.08, with interest from December 30, 1880. An unpaid debt bearing legal interest doubles itself in sixteen and two-third years, and now after the lapse of nearly nineteen years this debt amounts to more than $40,000.

It thus appears that Peyton's debt to the United States Court is much more than three times the amount of his claim against Stuart's estate. If, therefore, Stuart's interest in this debt of Peyton to the United States Court be more than 33 1-3 *per cent.*, that interest must be abundantly sufficient to counter-balance Peyton's claim asserted in this cause.

It seems to have been assumed by the appellant as a matter beyond controversy, that Stuart's interest in the United States

Court as an established creditor much exceeded this 33 1-3 *per cent.*, and the contention does not appear to have been controverted by Peyton in any stage of this litigation. However, as it is not upon the record a conceded fact, we are remitted to the evidence for enquiry.

Commissioner Leake's report, confirmed by the United States Court, establishes an aggregate indebtedness of the White Sulphur Springs Co. of $891,862.16, of which amount William A. Stuart was a creditor to the extent of $326,390, more than 36 *per cent.*

Of the aggregate indebtedness of the White Sulphur Springs Co. $532,800.74 were debts secured upon the property of the company reported by the commissioner as " vendor's liens, including debts paramount thereto." William A. Stuart is reported as fourth and last in this class of creditors to the extent of $116,052.02. The last decree, p. 224 of printed record of *Camden* v. *Stuart, &c.* of date of February 11, 1888, which was the subject of appeal to the United States Supreme Court, and by that court affirmed, seems to have contemplated that all these liens, except Stuart's, would be satisfied out of the encumbered property, and decreed in his behalf only that, to the extent of failure to satisfy the secured debts out of the property, Stuart's unpaid debt should share with the unsecured creditors.

We have no evidence in this record of the result of the sale of this property, and the extent to which its proceeds reduced the amount of these secured debts, but it must have materially reduced the aggregate indebtedness, as above stated, and correspondingly increased Stuart's proportionate interest, of more than 36 *per cent.* in the debts due by Peyton, and the other delinquent stockholders.

It seems to us, therefore, very clearly established by the evidence before the Circuit Court, that Stuart's beneficial interest in the debt due by Peyton is much in excess of the debt to him shown by the judgment and decrees of the Augusta Circuit

Court, and we think the lower court should have so declared, and disallowed Peyton's claim against the assets of Stuart under its administration.

The decree of the Circuit Court should therefore be reversed, and the cause remanded with instructions to the court, for reasons herein set out, to reject the claim of the appellee, and to distribute all funds retained for its payment among the adjudicated creditors of William A. Stuart.

*Reversed.*